*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

UNPUBLISHED
September 12, 2024

*In re* H.D., Minor.

No. 368687
Huron Circuit Court
Family Division
LC No. 18-004689-NA

Before: K. F. KELLY, P.J., and CAVANAGH and M. J. KELLY, JJ.

PER CURIAM.

Respondent-mother appeals by right the trial court's order terminating her parental rights to her minor child, HD. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This matter began when petitioner, the Department of Health and Human Services ("DHHS"), filed a petition on October 4, 2018, concerning respondent-mother's children, CG and HD. The petition alleged that respondent-mother's house was unsanitary with garbage on the floors and that she lacked food in the home for herself and the children. The petition also alleged that respondent-mother tested positive for marijuana and father tested positive for amphetamines and methadone, and included previous complaints involving substance abuse, family violence, improper supervision, physical neglect, threatened harm, educational neglect, domestic violence, and physical abuse. The trial court found probable cause to authorize the petition,[1] removed HD from respondent-mother's home, and placed HD in the custody of DHHS. Respondent-mother complied with the services the trial court ordered, and HD was eventually returned to respondent-mother once the home was deemed safe.

---

[1] Respondent-mother willingly terminated her parental rights with respect to CG and appeals only the termination of her parental rights as to HD.

-1-

Four years later, in May 2022, HD's father was arrested and charged with armed robbery, MCL 750.529, and carrying a firearm during the commission of a felony, MCL 750.227b. He pleaded guilty and was sentenced to 10 to 20 years' imprisonment and voluntarily terminated his parental rights to HD. DHHS subsequently filed a motion with the trial court seeking to remove HD from respondent-mother's home and citing respondent-mother's mental instability, over-medication, and "extreme paranoia." The trial court granted the motion, and HD was removed from respondent-mother's home and placed with her paternal grandmother. In January 2023, DHHS moved to suspend parenting time, alleging that respondent-mother threatened to commit suicide in front of her boyfriend. The trial court denied the motion, finding respondent-mother still maintained a positive relationship with HD, but ordered respondent-mother to not talk about suicide or mental health with HD during parenting time. However, a month later, respondent-mother threatened to commit suicide with a loaded gun. The trial court suspended parenting time pending a mental-health evaluation.

DHHS filed a supplemental petition for termination of respondent-mother's parental rights on March 24, 2023, alleging the incidents of threatening suicide, CG's allegation of sexual abuse by respondent-mother, and respondent-mother's declining mental stability. During the termination proceedings, before CG was going to testify, respondent-mother told CG, among other things: "Thank you very much. I hope you are glad you've ruined my f***ing life." DHHS argued that as a result of the confrontation, CG's testimony was tainted, and the hearing was adjourned, during which time DHHS filed a supplemental petition including allegations that respondent-mother confronted CG moments before he was to testify, and that DHHS also became aware of a felony complaint against respondent-mother for two counts of intimidating a witness, MCL 750.122(7)(a), regarding this incident.

After the proceedings resumed, the trial court found grounds for termination were established under MCL 712A.19b(3)(g) (failure to provide proper care or custody) and MCL 712A.19b(3)(j) (reasonable likelihood child will be harmed if returned to the parent), and that termination was in HD's best interests. This appeal followed.

## II. STANDARDS OF REVIEW

"This Court reviews for clear error the trial court's ruling that a statutory ground for termination has been established and its ruling that termination is in the children's best interests." *In re Martin*, 316 Mich App 73, 88 n 10; 896 NW2d 452 (2016) (quotation marks and citation omitted). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004).

We review unpreserved issues in termination cases for plain error affecting substantial rights. *In re MJC*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 365616); slip op at 2. "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear and obvious, 3) and the plain error affected substantial rights." *Id*. (quotation marks and citation omitted). "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *In re*

*Utrera*, 281 Mich App 1, 9; 761 NW2d 253 (2008). "The party asserting plain error bears the burden of persuasion with respect to prejudice." *MJC*, ___ Mich App at ___; slip op at 2.

## III. ANALYSIS

### A. STATUTORY GROUNDS FOR TERMINATION

Respondent-mother first argues the trial court clearly erred by finding statutory grounds for termination were established. We disagree.

"To terminate parental rights, a trial court must find by clear and convincing evidence that at least one statutory ground under MCL 712A.19b(3) has been established." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013). "The clear and convincing evidence standard is the most demanding standard applied in civil cases." *In re Pederson*, 331 Mich App 445, 472; 951 NW2d 704 (2020) (quotation marks, citation, and alteration omitted). Termination under MCL 712A.19b(3)(g) is appropriate when "[t]he parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." MCL 712A.19b(3)(g). "A parent's failure to participate in and benefit from a service plan is evidence that the parent will not be able to provide a child proper care and custody." *In re White*, 303 Mich App 701, 710; 846 NW2d 61 (2014).

Respondent-mother argues DHHS did not provide any evidence she was "financially able" to provide for HD. See MCL 712A.19b(3)(g). This argument is without merit. Respondent-mother testified that she had a legal source of income through Social Security Disability Income, stable housing, and was able to purchase toys and food for HD. By her own admission, respondent-mother stated she was able to financially provide for HD and, on the basis of this evidence, the trial court did not clearly err when it found by clear and convincing evidence respondent-mother was financially able to provide proper care and custody of HD. MCL 712A.19b(3)(g); see also *In re Gach*, 315 Mich App 83, 93; 889 NW2d 707 (2016).

Respondent-mother also argues that the trial court clearly erred when it found that she was unable to provide proper care and custody for HD. See MCL 712A.19b(3)(g). While respondent-mother completed the classes and services ordered, her case manager, parenting skills teacher, and living skills teacher all reported that respondent-mother did not fully benefit from the services. At the time of termination, respondent-mother's home was still unclean, she was not engaging with HD, and she was still experiencing mental instability despite counseling, including being hospitalized twice after threatening suicide and confronting CG before testifying. Additionally, respondent-mother was unable to follow the terms of parenting time by smoking in front of HD and giving HD candy despite HD's extensive dental problems. While respondent-mother did attend and complete the recommended and ordered services, the record shows respondent-mother did not benefit from them.

Respondent-mother contends her parental rights were terminated solely because she has a mental illness. This assertion is not supported by the record. The trial court found respondent-mother's home environment was unclean, unsafe, and respondent-mother was emotionally unstable. While respondent-mother's mental health played a significant role in the trial court's

decision, the fact of her mental-health issues was not the reason the trial court terminated her parental rights; rather it was her inability to demonstrate some control over her mental-health issues that would show she could care for HD. Consequently, the trial court did not clearly err when it found statutory grounds for termination existed under MCL 712A.19b(3)(g) by clear and convincing evidence.[2] See *In re BZ*, 264 Mich App at 296-297.

## B. BEST INTERESTS

Next, respondent-mother argues the trial court clearly erred when it found that termination of her parental rights was in HD's best interests. We disagree.

"[O]nce a statutory ground for termination is established, the trial court must then determine whether termination is in the best interests of the child." *In re Moss*, 301 Mich App at 86. The trial court "cannot terminate the parent's parental rights unless it also finds by a preponderance of the evidence that termination is in the best interests of the children." *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015). "The focus at the best-interest stage has always been on the child, not the parent." *In re Atchley*, 341 Mich App 332, 346; 990 NW2d 685 (2022) (quotation marks and citation omitted). "Accordingly, at the best-interest stage, the child's interest in a normal family home is superior to any interest the parent has." *In re Moss*, 301 Mich App at 89. "The trial court should weigh all the evidence available to determine the children's best interests." *In re White*, 303 Mich App at 713.

> To determine whether termination of parental rights is in a child's best interests, the court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*Id*. at 713-714 (quotation marks and citations omitted.)]

The "fact that a child is living with relatives when the case proceeds to termination is a factor to be considered in determining whether termination is in the child's best interests." *In re Olive/Metts Minors*, 297 Mich App 35, 43; 823 NW2d 144 (2012). "A trial court's failure to explicitly address whether termination is appropriate in light of the children's placement with relatives renders the factual record inadequate to make a best-interest determination and requires reversal." *Id*.

Respondent-mother argues the trial court clearly erred when it failed to address HD being placed with a relative in its best-interests analysis because HD was placed with her paternal

---

[2] Because the trial court only needs to find one statutory ground for termination, we need not address respondent-mother's remaining arguments with respect to the trial court's statutory bases for termination. See *In re Moss*, 301 Mich App 80.

grandmother. This argument is without merit. The trial court addressed HD's placement with her paternal grandmother in its order and opinion:

> In the past, [the father] testified that he was the one to take care of the children including cooking for them, cleaning the household, putting the children to bed, and getting them ready for school. [Respondent-mother] never did that for either of the children. Now paternal grandma does all those things for [HD]. [Respondent-mother] does not have the capacity and disposition to feed, clothe and provide educational help or transportation for [HD]. Now paternal grandma does and has been providing this since [HD] came into her care. [The paternal grandmother] has been able to provide [HD] with a stable, satisfactory, and desirable living environment since the day she took her into care.

The trial court clearly addressed HD's placement with her paternal grandmother in its best-interests analysis and concluded termination was still in HD's best interests. Specifically, the trial court cited respondent-mother's inability to provide a clean, safe, and healthy environment for HD, while HD's paternal grandmother could provide a stable home environment for HD. The trial court also explained how termination was in HD's best interests because she would be able to stay with her paternal grandmother, who afforded HD the stability and care HD needed but could not get from respondent-mother. Thus, because the trial court addressed the issue of placement with a relative in its best-interests analysis, the trial court did not clearly err. *In re Olive/Metts*, 297 Mich App at 43.

Respondent-mother also argues there was a bond between HD and respondent-mother. While the record supports HD and respondent-mother shared a bond, the case manager worried HD only enjoyed parenting time because respondent-mother would buy new toys for HD. Respondent-mother's parenting teacher also expressed concern about respondent-mother not engaging with HD during parenting time and spending a majority of parenting time shopping to buy items. Thus, while respondent-mother may have established a bond with HD, the best-interests analysis is designed to focus on the child and not the parent. See *In re Atchley*, 341 Mich App at 346. Moreover, the bond between respondent-mother and HD was only one of several factors for the trial court to consider when deciding whether termination was in HD's best interests, and the trial court did not clearly err in finding the minor benefit of the bond with HD was substantially outweighed by other factors. See *In re White*, 303 Mich App at 713-714. The trial court found HD's paternal grandmother provided a healthy home environment, while respondent-mother's continuing mental health and other problems caused respondent-mother to be unable to provide HD a stable home. *In re Moss*, 301 Mich App at 89. For these reasons, the trial court did not clearly err when it found the termination of respondent-mother's parental rights was in HD's best interests. *Id*.

### C. UNPRESERVED ISSUES

Respondent-mother argues the trial court erred because it applied the wrong evidentiary standard at the termination hearing. Respondent-mother also argues the trial court erred when it

allowed DHHS to file a supplemental petition after testimony was taken during the termination hearing.[3] We disagree.

Respondent-mother asserts the trial court changed the evidentiary standard halfway through the termination hearing. Specifically, the trial court used the "legally admissible evidence" standard for the August 15, 2023 hearing, and then changed the standard to "relevant and material" evidence at the October 3, 2023 hearing. Respondent-mother argues the trial court lowered the evidentiary standard for the new allegations affecting her due-process rights.

At a termination hearing after adjudication, "[t]he Michigan Rules of Evidence do not apply. . . . [A]ll relevant and material evidence, including oral and written reports, may be received by the court and may be relied upon to the extent of its probative value." MCR 3.977(H)(2). However, if termination of parental rights is sought through a supplemental petition, the trial court may only rely on "legally admissible evidence" when considering whether the facts in the supplemental petition are true. MCR 3.977(F)(1)(b).

The trial court held the hearing on October 3, 2023, for the supplemental petition filed by DHHS on September 7, 2023, that recommended termination on the basis of the new and existing allegations of respondent-mother confronting CG and being charged with a felony. The trial court overruled respondent-mother's objection to hearsay testimony, stating that the rules of evidence did not apply to the proceedings. However, at the termination hearing on August 15, 2023, the trial court correctly used the legally admissible evidentiary standard for the hearing on the first supplemental petition.

The trial court erred by using the wrong evidentiary standard for the October 3, 2023 termination hearing. See *id*. The error was clear and obvious, as MCR 3.977(F) plainly states that termination hearings with respect to supplemental petitions "on the basis of one or more circumstances new or different from the offense that led the court to take jurisdiction" require the use of legally admissible evidence. *Id*. However, respondent-mother has not demonstrated how that error substantially affected her rights. See *In re MJC*, ___ Mich App at ___; slip op at 2 ("The party asserting plain error bears the burden of persuasion with respect to prejudice.") Respondent-mother argues this change in evidentiary standard caused confusion and put her in a situation with the rules stacked against her, but respondent-mother does not elaborate on how the error caused

---

[3] To preserve an issue for appeal, "a party need only bring the issue to the [trial] court's attention— whether orally or in a brief or both." *Glasker-Davis v Auvenshine*, 333 Mich App 222, 228; 964 NW2d 809 (2020); see also *In re TK*, 306 Mich App 698, 703; 859 NW2d 208 (2014). Respondent-mother objected to the introduction of hearsay evidence at the relevant hearing, and the trial court decided the issue by noting the rules of evidence did not apply at that point in the proceedings. Respondent-mother did not object to the trial court's holding that the rules of evidence did not apply. Because respondent-mother only objected to the evidence and not the trial court's ruling about what evidence could be used, the issue is not preserved. See *In re TK*, 306 Mich App at 703 ("While respondent objected to the appointment of a guardian, she did not object on constitutional grounds. Therefore, this issue has not been preserved."). Respondent-mother also failed to object to DHHS filing a supplemental petition in the trial court, resulting in that issue being unpreserved as well. *Id*.

prejudice affecting the outcome of the proceedings. *In re Utrera*, 281 Mich App at 9. Respondent-mother has failed to show prejudice because although the trial court relied on CG's claim of sexual assault in its decision, many other factors predominated the trial court's reasoning for terminating respondent-mother's parental rights. Accordingly, respondent-mother cannot show that the trial court plainly erred when it employed the incorrect evidentiary standard at the October 3, 2023 hearing.

Respondent-mother also argues the trial court erred by allowing DHHS to file an amended petition after testimony was already taken. DHHS filed an amended petition on September 9, 2023, after testimony was taken at the first termination hearing on August 15, 2023. DHHS filed the supplemental petition to include respondent-mother's hostile behavior toward CG just as CG was to testify. Respondent-mother was subsequently charged with a felony and arraigned on that charge on September 6, 2023.

The trial court did not plainly err when it allowed DHHS to file a supplemental petition because DHHS was obligated to do so when it became aware of respondent-mother's actions toward CG and the felony complaint against her. See MCL 712A.19 ("If [DHHS] becomes aware of additional abuse or neglect of a child who is under the court's jurisdiction and if that abuse or neglect is substantiated as provided in the child protection law, 1975 PA 238, MCL 722.621 to 722.638, the agency *shall* file a supplemental petition with the court") (emphasis added); *Wolfenbarger v Wright*, 336 Mich App 1, 31; 969 NW2d 518 (2021) ("The use of the word 'shall' denotes mandatory action.")

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Mark J. Cavanagh
/s/ Michael J. Kelly